THE UNITED STATES, PLAINTIFFS IN ERROR V. GEORGE MAC-
DANIEL.

The United States instituted a suit to recover a balance charged on the
books of the treasury department against the defendant, who was a clerk
in the navy department, upon a fixed annual salary, and acted as agent
for the payment of moneys due to the navy pensioners, the privateer pen-
sioners, and for navy disbursements ; for the payment of which, funds were
placed in his hands by the government.  He had received an annual com-
pensation for his services in the payment of the navy pensioners ; and for
fifteen years, he had received, in preceding accounts, commissions of one
per cent on the moneys paid by him for navy disbursements.  He claimed
these commissions at the treasury, and the claim had been there rejected
by the accounting officers ; and if allowed the same, he was not now in-
debted to the government.  The United States, on the trial of the case in
the circuit court, denied the right of the defendant to these commissions,
as they had not been allowed to him by any department of the government,
and asserted that the jury had not power to allow them on the trial.
The rejection of the claim to commissions by the treasury department,
formed no objection to the admission of it as evidence of offset before the

[United States v. Macdaniel.]

jury.    Had the claim never been presented to the department, it could
not have been admitted as evidence by the court.    But, as it had been
made out in form and  presented to the proper accounting officers, and
had been rejected, the circuit court did right in submitting it to the jury;
if the claim was considered as equitable.

This court will not sanction a limitation of the power of the circuit court, in
cases of this kind, to the admission of evidence to the jury on a trial, only
to such items of offset against the claims of the government as were
strictly legal, and which the accounting officer of the treasury should
have allowed.    It is admitted that a claim which requires legislative sanc-
tion, is not a proper offset either before the treasury officers or the court.
But there may be cases in which the services having been rendered, a
compensation may be made within the discretion of the head of the de-
partment; and in such cases the court and jury will do, not what an audi-
tor was authorized to do, but what the head of the department should
have done, in sanctioning an equitable allowance.

The act of the 27th of March 1804, by which the president of the United
States was authorized to attach to the navy yard at Washington a captain
of the navy for the performance of certain duties, was correctly construed
by the head of the navy department until 1829, allowing to the defend-
ant commissions on the sums paid by him, as the special agent of the
navy department in making the disbursements.

By an act passed 10th July 1832, congress authorized the appointment of
a separate and permanent navy agent at Washington, and directed the
performance of the duties " not only for the navy yard in the city of
Washington, but for the navy department, under the direction of the
secretary of the navy, in the payment of such accounts and claims as the
secretary may direct."    These duties would not have been so specially
stated in this act, if they had been considered by congress as coming
within the ordinary duties of an agent for the navy yard at Washington,
under the act of 1804.    But independent of this consideration, it is enough
to know that the duties in question were discharged by the defendant,
under the construction given to the law by the secretary of the navy.

It will not be contended that one secretary of a department has not the
same power as another to give a construction to an act which relates to
the business of his department.

A practical knowledge of any one of the great departments of the govern-
ment, must convince every person that the head of a department, in the
distribution of its duties and responsibilities, is often compelled to exer-
cise his discretion.    He is limited in the exercise of his powers by the
law, but it does not follow that he must show a statutory provision for
every thing he does.    No government could be administered on such
principles.    To attempt to regulate by law the minute movements of
every part of the complicated machinery of government, would evince a
most unpardonable ignorance of the subject.    Whilst the great outlines
of its movements may be marked out, and limitations imposed on the ex-
ercise of its powers ; there are numberless things which must be done,

[United States v. Macdaniel.]

that can neither be anticipated nor defined; and which are essential to the proper action of the government. Hence, of necessity, usages have been established in every part of the government, which have become a kind of common law, and regulate the rights and duties of those who act within their respective limits; and no change of such usages can have a retrospective effect, but must be limited to the future.

Usage cannot alter the law, but it is evidence of the construction given to it, and must be considered binding on past transactions.

That the duties in question were discharged by the defendant during office hours, can form no objection to the compensation claimed. They were required of him by the head of the department; and being a subordinate, he had no discretion to decline the labour and responsibility thus imposed. But seeing that his responsibility would be greatly increased, and perhaps his labour, the secretary of the navy increases his compensation, as in justice he was bound to do.

This action of assumpsit has been brought by the government to recover from the defendant the exact sum which in equity it is admitted he is entitled to receive for valuable services rendered to the public in a subordinate capacity, under the express sanction of the head of the navy department. This sum of money happens to be in the hands of the defendant; and the question is, whether he shall, under the circumstances, be required to surrender it to the government, and then petition congress on the subject. A simple statement of the case would seem to render proper a very different course.

It would be a novel principle to refuse payment to the subordinates of a department, because their chief, under whose direction they had faithfully served the public, had given an erroneous construction to the law.

The secretary of the navy, in authorizing the defendant to make the disbursements on which the claim for compensation is founded, did not transcend those powers, which, under the circumstances of the case, he might well exercise.

ERROR to the circuit court of the United States for the county of Washington, in the district of Columbia.

This action was brought on the 14th of August 1829 in the circuit court by the United States, to recover from the defendant the sum of nine hundred and eighty-eight dollars and ninety-four cents, alleged to have been found due on a settlement of his accounts by the accounting officers of the treasury department.

The case was tried in May 1831, and a verdict and judgment rendered for the defendant; to reverse which judgment, the United States prosecuted this writ of error.

Before the verdict was given, the district attorney of the

United States filed the following bill of exceptions.   After stating that the United States gave in evidence an account against the defendant, settled at the treasury, upon which they claimed from the defendant a balance of nine hundred and eighty-eight dollars and ninety-four cents, with interest from August 3d, 1829, the bill of exceptions proceeds:

" The defendant then examined a witness to prove that the said defendant was a clerk in the navy department, at an annual salary of fourteen hundred dollars, and while he was so acting, he was engaged and acted as the agent for the payment of the money due to the navy pensioners, the privateer pensioners, and acted also as a special agent for the navy disbursements; and the moneys which were applied to the use of those objects were placed in his hands by the government, to be disbursed by him.   That he was allowed for his services in the payment of pensions, the annual sum of two hundred and fifty dollars.   But he has no knowledge that any annual sum was ever allowed him for his services as a special agent for the navy disbursements.   The witness stated that he was also a clerk in the navy department, and was in the habit of stating the defendant's accounts as special agent; and he knows that a commission of one per cent was always allowed him, to his knowledge, for ten or fifteen years past, until the settlement of the present account, upon his disbursements as special agent for the navy disbursements.

" The witness further stated that the services of this special agent, in these disbursements, were similar to those performed by other navy agents, such as the navy agent of Boston, &c. That they amounted, during the period that he acted as agent as aforesaid, to from fifty to one hundred thousand dollars a year; that the defendant gave no bond or security, to his knowledge, for the performance of these duties.

" The defendant then gave in evidence to the jury the certificate of B. W. Crowninshield, then secretary of the navy, of the 3d May 1817, and his account against the United States, allowed by Smith Thompson, then secretary of the navy.

" *Navy Department, May* 3, 1817.

" George Macdaniel, as agent of the navy pension fund, upon

all expenditures by him heretofore made, is entitled to the same commissions as have been allowed to other agents.

"B. W. CROWNINSHIELD,

"*Secretary of the Navy.*

"The navy pension fund to George Macdaniel:

"For compensation as clerk of the navy pension accounts, from the 1st of July to the 31st of December 1818 inclusive, at the rate of two hundred and fifty dollars per annum   $125 00.

"Respectfully submitted,

"G. MACDANIEL.

"Upon which account are the following indorsements: 'To be allowed,

"'SMITH THOMPSON.

"'Received payment in account,

"'G. MACDANIEL.'

"The defendant set up against the claim made against him by the United States, in this case, a charge for a commission of one per cent, as special agent of the navy department, on the expenditure of eleven thousand seven hundred and eighty-nine dollars and twenty cents, amounting to one hundred and seventeen dollars and eighty-nine cents, and a like commission of six hundred and ninety-two dollars and thirty cents, upon the expenditure of sixty-nine thousand two hundred and twenty-nine dollars and ninety-two cents, which commissions had been disallowed by the navy department, and if now disallowed upon this trial, would leave the defendant indebted to the United States in the sum of eight hundred and ten dollars and nineteen cents, exclusive of the other items of claim made against him in this case.

"The witness who gave testimony for the defendant, proved that the services performed by the defendant, as special agent as aforesaid, were performed during office hours, and occupied from one-third to one-fourth of his time.

"The defendant further proved that witness had had occasion in the discharge of his duties in the fourth auditor's office, to examine the accounts of defendant, and reported the accounts in question; that the same commission was claimed by defendant in these accounts, as had been charged and allowed in all his previous accounts, so far as witness has examined them; that

the services had then been rendered, and the moneys disbursed, when the exception was taken; that witness knows that the accounts of public disbursements, including all these allowances of commissions upon disbursements, are annually submitted to congress, and inspected by a committee specially appointed for that purpose; that said committee attends at the different offices, where the books are open for their inspection; that the accounts embracing defendant's claims and allowances are regularly so submitted and inspected, and that no objection, as witness has ever heard, was taken by any committee, or any individual, to such allowances, until defendant's final account, after leaving office, was settled by the fourth auditor. Defendant promptly paid over all the moneys in his hands when the amount was adjusted, reserving only the sums claimed by him, which appear in the accounts exhibited; and if they are allowed him, he has no public money in his hands.

" Defendant further offered in evidence a report from the secretary of the treasury to congress, 1st March 1831. Doc. 126, H. R. 21st Cong. 2d Sess.

"Upon the evidence so given to the jury, the counsel for the United States prayed the court to instruct the jury, that if they should believe the same to be true, that still the defendant had no right, by law, to the commissions which he claims in this case, and that, as the sums so charged as aforesaid, as commissions, had never been allowed to him by any department of the government, it was not competent for the jury to allow them upon this trial.

"Which instruction the court refused to give; to which refusal the United States, by their attorney, excepted."

The account exhibited on the trial by the district attorney of the United States, by which the balance alleged to be due was shown, was as follows:

To balance due the United States per his account
current, rendered on the 5th June 1829,    -    $688 33
This sum disallowed, as per reconciling statement
of his navy expenditure account herewith,    -    228 14.
Commission on sixty-nine thousand two hundred
and twenty-nine dollars and ninety-two cents,
paid over to the treasurer of the United States,

at one per cent, as debited in his account as late special agent of the navy department, marked A. Recorded on the 5th June 1829. Not allowed; - - - - - - -     692 30

Compensation as agent for paying pensions from the 1st of March to the 31st of May 1829. Not allowed, - - - - - - -     62 50

Error in statement No. 141, (previous report) in payments of Fall's pension, - - -     6 00

$1,677 29

By this sum deposited to the credit of the treasurer of the United States the 3d of August 1829,     688 33

Balance due the United States, by statement examined by comptroller, 12th of August 1829,     988 96

THOMAS H. GILLISS, *Act. 4th Aud.*

The case was argued by Mr Taney, attorney-general, for the United States; and by Mr Coxe and Mr Jones, for the defendant.

For the United States it was contended, that the defendant was not entitled to the commissions claimed by him and mentioned in the bill of exceptions.

The attorney-general stated that the question presented in the case was, whether the defendant was entitled to commissions on payments made by him for navy purposes.

The navy agents, although not established by any particular law, have been recognised in various acts of congress. Their duties are well known and ascertained. There are navy agents at each navy yard, and there are navy agents who are not permanent. There is also an agent at the navy department to settle accounts not properly belonging to other navy agents. Mr Macdaniel was employed as the permanent navy agent at Washington; and also as the special agent of the department.

A reference to the accounts in the record will show that he made payments for sloops of war, ship houses, and for the marine corps. In making these payments, he performed duties which properly belonged to permanent navy agents, and for

[United States v. Macdaniel.]

which they were entitled to be paid.  The question then is, whether he is entitled to commissions on the disbursements of money, which properly belonged to the duties of other agents.

By the act of congress of 22d March 1804, 3 Laws U. S. 619, the commandant of the navy yard at Washington was required to perform all the duties which have been performed by the defendant in error.

This continued to be the law until July 10, 1832, when congress passed an act repealing the provision assigning the duties of navy agents to the commandant of the navy yard; and authorizing the appointment of a permanent navy agent. The act of 1809, 4 Laws U. S. 221, did not embrace the navy yard at Washington.

Capt. Tingey was for many years the commandant of that navy yard; but he did none of the duties assigned to him by the act of 1804: those duties were performed by the defendant. The case then was that of an officer of the United States, on whom duties were specially imposed, omitting to comply with them, and those duties executed by another person, who had no authority under any law to perform them.  All the allowances, therefore, made to him for commissions on disbursements, as all his disbursements were such as ought to have been made by the commandant of the navy yard, were in violation of the act of 1804.  These allowances have been made by a mistake of the law, and cannot be set off.  Can the head of the navy department, by allowing payments not authorized by law, or by one not entrusted and directed by law to make them, authorize a compensation for them ?  This is denied.

The first question to be decided by the court is, what is the true construction of the act of 1804?  The second is, how far the navy department can authorize the allowance of commissions, if they are not within the provisions of that act?

The language of the act of 1804 is such as to show clearly that all the payments to be made at the navy department, which were made by the defendant, were to be made by the commandant of the navy yard.  For this purpose that office was created and the officer appointed.

When the law has fixed and established the duties of an officer, another person, or another officer, cannot be charged

[United States v. Macdaniel.]

with them. When duties are not defined, and when any one has an appointment in a department, the officer at the head of the department may enlarge the duties of the subordinate, and they must be executed. If these are extra duties, or new duties, it does not follow that any additional compensation is to be made. The decision of the head of the department is conclusive on this subject.

But the case before the court is not that of enlarging duties, or of calling for the performance of new ones, for which no officer has been appointed; it is that of giving duties to one, when another is the proper officer assigned by law to do them. The right to do this is denied. When the law is silent, the department may sanction an allowance, but when the law expressly provides for the service, no usages, no direction can be set up to control the law. It is precisely the same case in principle as if it had said the duties shall not be performed by any other.

It is admitted that if usage can sanction the allowance claimed by the defendant, it is sustained; but it is denied that usage is of any value when it is in direct violation of law. As to the suggestion, that if the allowances which have been made to the defendant in accounts finally settled at the treasury were made in violation of law, then the same should be reimbursed to the United States, the answer is, that the accounts, having been adjusted, are finally disposed of. The accounting officers of the treasury act judicially upon accounts submitted to them, and no claim can be made for the repayment of allowances made by them in accounts which have been finally disposed of by them.

Mr Coxe and Mr Jones, for the defendant in error.

They denied that by the act of 1804 the duties performed by the defendant were assigned to the commandant of the navy yard at Washington. He was by that act made the navy agent *at that navy yard*, but he was not authorized to make, nor did he ever make payments from the navy department. The words of the act are "agent of the department," not navy agent. The duties of navy agent are *not* defined, and must necessarily rest in a great degree on the discretion of the secre-

[United States v. Macdaniel.]

tary. Mr Macdaniel has for twelve years been the agent for these payments, and he has been so under the uniform construction of that law which is now contended for in his favour. If he was not a clerk in the navy department, the duties performed by him, for which the commissions are claimed, did not appertain to those of any other officer. The allowances made to him have appeared in accounts which have passed under the scrutiny of a committee of congress without exception, and they have been sanctioned by every secretary of the navy while he performed the duties for which they are claimed.

The account of the defendant does not show any expenditures at the navy yard of Washington. It shows miscellaneous disbursements in various parts of the United States, and this under the immediate directions of the secretary here, and done as a special agent, out of the ordinary duties of the local navy agents.

The long usage should settle the construction of the law if it was doubtful; and the objection to pay for services rendered under this long secured construction, is founded on no principles of justice. It was for the head of the department to ascertain what the law was; and his construction of it should prevail; most certainly in favour of services performed under his directions, and with the anticipation of a compensation for them, derived from the uninterrupted usages of the department.

Mr Justice M'LEAN delivered the opinion of the Court.

A writ of error is prosecuted in this case, by the United States, to recover a judgment of the circuit court for the district of Columbia.

The action was brought by the government to recover from the defendant a balance charged against him, on the books of the treasury department, amounting to the sum of nine hundred and eighty-eight dollars ninety-four cents.

In his defence, the defendant proved that he was a clerk in the navy department, upon an annual salary of fourteen hundred dollars; and that he also acted as the agent for the payment of the moneys due to the navy pensioners, the privateer pensioners, and for the navy disbursements. That the moneys

applied to the use of these objects, were placed in his hands by the government. That he received the annual sum of two hundred and fifty dollars, for his services, in the payment of pensioners ; but that for ten or fifteen years, he received one per cent on moneys paid by him for navy disbursements.

That these disbursements amounted to from the sum of fifty, to a hundred thousand dollars a year, and that no security was required from him. He claimed the usual allowance of one per cent, upon certain sums of money, disbursed by him, which had been rejected by the treasury officers, but which, if allowed, would show that he was not indebted to the government.

Upon this state of facts, the attorney for the United States prayed the court to instruct the jury, that if they should believe the same to be true, that still the defendant had no right by law to the commissions which he claims, as the sum charged had never been allowed to him by any department of the government; and that it was not in the power of the jury to allow the commissions on the trial. But the court refused to give the instructions, and a bill of exceptions was taken.

Two questions are made by the bill of exceptions, for the decision of this court.

1. Whether the defendant has a right to compensation for the services charged.

2. Whether, if such right existed, it should have been allowed on the trial, as the proper department had decided against it.

As to the second ground, it may be proper to remark, that the. rejection of the claim of the defendant by the treasury department, formed no objection to the admission of it by the court, as evidence of offset to the jury. Had the claim never been presented to the department for allowance, it would not have been admitted as evidence by the court. But, as it had been made out in form, and presented to the proper accounting officer, and was rejected, the circuit court did right in submitting it to the jury; if the claim was considered to be equitable.

On the part of the government, it is contended that, in a case like the present, the court, in admitting evidence of offset against the claim of the government, is limited, not only to

**SUPREME COURT.**

such items as were exhibited to the auditor, but to such as were strictly legal, and which he should have allowed.

This limitation on the power of the court, cannot be sanctioned. It is admitted, that a claim which requires legislative sanction, is not a proper offset, either before the treasury officers or the court. But there may be cases, in which, the service having been rendered, a compensation may be made within the discretion of the head of the department; and in such cases, the court and jury will do, not what an auditor was authorized to do, but what the head of the department should have done, in sanctioning an equitable allowance.

It being clear, that the circuit court did not err, in allowing the offset of the defendant, if he had a right to compensation for the services rendered, the validity of this right will be the next point for inquiry.

On the part of the government, it is contended, that the head of a department may vary the duties of the clerks in his department, so as to give despatch and regularity to the general business of the office ; but that by such changes, no clerk or other officer of the department, has a right to an increase of compensation. That it appears in the present case there was no increase of labour, as to time; as the services for which compensation is charged were rendered during office hours. And it is also insisted, that the duties discharged belonged to another officer of the government; and that it is not competent for any officer of the government, even the president himself, to take from one officer certain duties which the law has devolved upon him, and require another to discharge them.

By the act of 27th March 1804, the president was authorized to "attach to the navy yard at Washington city, and to frigates and other vessels, laid up in ordinary in the eastern branch, a captain of the navy, who shall have the general care and superintendence of the same, and shall perform the duties of agent to the navy department."

Under this law, the attorney-general contends it was the duty of the commandant at the navy yard to make the disbursements which were made by the defendant; and consequently, no compensation for such services can be allowed to the defendant.

[United States v. Macdaniel.]

Whatever may now be the construction of this act, as it regards the duties of the commandant, it appears he was not required to make the disbursements which were made by the defendant; and consequently they could not have been considered, at that time, as forming a part of the duties of commander of the navy yard.

By the act of the 10th July 1832, congress authorized the appointment of a separate and permanent agent at Washington, who shall be entitled " to the same compensation, and under the same responsibilities, and to be governed by the same laws and regulations which now are, or may hereafter be adopted for other navy agents;". and it is made his "duty to act as agent not only for the navy yard in the city of Washington, but for the navy department, under the direction of the secretary thereof, in the payment of such accounts and claims as the secretary may direct."

By this act, that part of the act of 1804 which required the commander of the navy yard at the city of Washington to act as agent, is repealed.

Until the defendant was removed from office, in 1829, he continued to discharge the duties as special agent for the navy disbursements. But after that period, it is stated that a new construction of the act of 1804 being given, those duties were required to be performed by the commander of the navy yard, who continued to discharge them until an agent was appointed under the act of the last session.

Until this time, the act of 1804 seems never to have been construed, by the head of the navy department, as providing for the special services performed by the defendant; and it would seem from the provision of the late act, which requires the agent to act, not only for the navy yard, but for the navy department, and to "pay such accounts and claims as the secretary may direct," that the former construction was correct; and the court are of this opinion. These duties would not have been so specially stated in the act of last session, if they had been considered by congress as coming within the ordinary duties of an agent for the navy yard. But, independent of this consideration, it is enough to know that the

[United States v. Macdaniel.]

duties in question were discharged by the defendant, under the construction given to the law by the secretary of the navy.

It will not be contended that one secretary has not the same power as another, to give a construction to an act which relates to the business of the department. And no case could better illustrate the propriety and justice of this rule, than the one now under consideration.

The defendant having acted as agent for navy disbursements for a great number of years, under different secretaries, and having uniformly received one per cent, on the sums paid, as his compensation, he continues to discharge the duties and receive the compensation, until a new head of the department gives a different construction of the act of 1804, by which these duties are transferred to the commander of the navy yard. By this new construction, whether right or wrong, no injustice is done to the defendant, provided he shall be paid for services rendered under the former construction of the same act. But such compensation has been refused him.

It is insisted that as there was no law which authorized the appointment of the defendant, his services can constitute no legal claim for compensation, though it might authorize the equitable interposition of the legislature. That usage, without law or against law, can never lay the foundation of a legal claim, and none other can be set off against a demand by the government.

A practical knowledge of the action of any one of the great departments of the government, must convince every person that the head of a department, in the distribution of its duties and responsibilities, is often compelled to exercise his discretion. He is limited in the exercise of his powers by the law; but it does not follow that he must show a statutory provision for every thing he does. No government could be administered on such principles. To attempt to regulate, by law, the minute movements of every part of the complicated machinery of government would evince a most unpardonable ignorance on the subject. Whilst the great outlines of its movements may be marked out, and limitations imposed on the exercise of its powers, there are numberless things which must be done, that

can neither be anticipated nor defined, and which are essential to the proper action of the government. Hence, of necessity, usages have been established in every department of the government, which have become a kind of common law, and regulate the rights and duties of those who act within their respective limits. And no change of such usages can have a retrospective effect, but must be limited to the future.

Usage cannot alter the law, but it is evidence of the construction given to it; and must be considered binding on past transactions.

That the duties in question were discharged by the defendant during office hours, can form no objection to the compensation claimed. They were required of him by the head of the department, and, being a subordinate, he had no discretion to decline the labour and responsibility thus imposed. But seeing that his responsibility would be greatly increased, and perhaps his labour, the secretary of the navy increases his compensation, as in justice he was bound to do.

In discharging the ordinary duties of clerk, the compensation of the defendant was fixed at fourteen hundred dollars; but when the duties of agent for navy disbursements were superadded to those of clerk, there is an adequate augmentation of pay given to him. Is there any thing unreasonable or unjust in this?

But it is said there was no law authorizing such an officer to be appointed.

That the duties performed by the defendant were necessary for the public service, has not been denied; nor is it pretended that the commissions allowed him, were higher than the amount paid for similar services elsewhere. The payments by him were legal, and being made under the immediate direction of the secretary of the navy, errors were avoided which might have occurred under other circumstances.

It must be admitted that there was no law authorizing the appointment of the defendant, nor was it considered necessary that there should be a special statutory provision on the subject. For the convenience of the officers of the navy and others who were engaged in the service of the department, certain disbursements became necessary; and as no law spe-

cially authorized the appointment of an agent for this purpose, they were required to be made by a clerk.

In this manner were these payments made for fifteen years, under different secretaries of the navy, and the same rate of compensation, as now claimed, was allowed. The charge was sanctioned by the accounting officers of the treasury department, and no objection was ever made to it by the committees of congress, who annually inspected the books of the department.

It would seem, therefore, whether the claim of the defendant be varied in reference to the services performed or to the long sanction which has been given to them by the navy and treasury departments, its justice is unquestionable. The government does not deny the performance of the services by the defendant, nor that they do in equity entitle him to compensation; but, as his appointment was without legal authority, it is insisted he can obtain compensation only by application to congress.

An action of assumpsit has been brought by the government to recover from the defendant the exact sum, which, in equity, it is admitted he is entitled to receive, for valuable services rendered to the public, in a subordinate capacity, under the express sanction of the head of the navy department. This sum of money happens to be in the hands of the defendant, and the question is whether he shall, under the circumstances, be required to surrender it to the government, and then petition congress on the subject.

A simple statement of the case would seem to render proper a very different course.

If some legal provision be necessary to sanction the payment of the compensation charged, application should be made to congress by the head of the department, who required the service and promised the compensation. But no such provision is necessary. For more than fifteen years the claim has been paid for similar services, and it is now too late to withhold it for services actually rendered. It would be a novel principle to refuse payment to the subordinates of a department, because their chief, under whose direction they had faithfully served the public, had mistaken his own powers, and had given an

[United States v. Macdaniel.]

erroneous construction of the law. But the case under consideration is stronger than this. It is not a case where payment for services is demanded, but where the government seeks to recover money from the defendant, to which he is equitably entitled for services rendered. This court cannot see any right, either legal or equitable, in the government, to the sum of money for the recovery of which this action was brought. They think that the secretary of the navy, in authorizing the defendant to make the disbursements, on which the claim for compensation is founded, did not transcend those powers which, under the circumstances of the case, he might well exercise. And they therefore think that the circuit court did not err in refusing to give the instructions to the jury as prayed by the attorney of the United States. The judgment of the circuit court is therefore affirmed.

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the district of Columbia, holden in and for the county of Washington, and was argued by counsel: on consideration whereof, it is ordered and adjudged by this court, that the judgment of the said circuit court in this cause be, and the same is hereby affirmed.