# PRACTICE REPORTS.

## SUPERIOR· COURT.

### THE REPUBLIC OF MEXICO agt. FRANCISCO DE ARRANGOIS, BARTOLOMI BLANCO, and RAMON PALANCA.

Suits may be brought in our courts by foreign governments in the federative name; but our proceedings must be adapted to the case, so as to do justice to all parties;

Or, there must be a party to the record with competent authority from his government to act on its behalf.

Therefore, the Republic of Mexico may maintain an action in the name of the republic as an aggregate body; and the modes of proceeding in cases of foreign corporations, and of other states of the union, may be resorted to for the regulations of the practice.

The language of the Code admits of the court treating an *undertaking*, signed by an admitted agent of a foreign government appointed to sue, to be an undertaking on the part of the *plaintiff*.

By the decision in the court of appeals in *Valarino* agt. *Thompson*, (3 *Selden*, 576,) it is settled that it is the right·and privilege of the United States, that a foreign consul residing here should be sued by the federal courts. Under an admitted constitutional power, the state courts are excluded from jurisdiction. The case of *Flynn* agt. *Stoughton* (5 *Barb. S. C. R.* 113,) is overruled.

The construction of the second subdivision of the 179th section of the Code is, that a defendant may be arrested in an action *for money received*, where he is a factor, attorney, agent, &c., or other person in a fiduciary capacity; and that the same designated persons may be arrested for property embezzled or fraudulently misapplied by them. There are two cases for the arrest; and the enumerated persons may be arrested in either of them.

In one class of cases, under § 179, the order of arrest may be made upon *facts* which may be entirely *independent of the cause of action;* which are to be stated in affidavits, and need not be stated in the complaint; and where the arrest may take place after the cause has actually been tried.

---

The Republic of Mexico agt. Arrangois and others

---

In the other class, under that section, where a defendant is sought to be arrested as an agent for receiving money, the ground of action and the ground of arrest are identical. If the cause of action is shown to be unfounded, the cause of *arrest* must fail. If the affidavits destroy the allegation of a fiduciary character, the arrest cannot be sustained, although that will not terminate the suit.

Where, in these last mentioned cases, the defendant raises a *fair legal presumption* that his claim may be supported, the arrest should not be sustained.

Under the Code now, a case of arrest—of bail or no bail—may be decided upon affidavits which tend to decide the cause as then presented. (*See* 2 *Selden*, 562.)

In this case, the defendant, having been entrusted by the Mexican government with a duty of delicacy and high importance—an agency to pay out and superintend for the plaintiff—which had been accomplished with admitted skill and promptitude; and, under all the facts,

*Held,* that the defendant showed a right to a compensation, by way of commission from his government—(the amount claimed and withheld by the defendant, being the cause of action and arrest.) But the court must decide, even on a motion to discharge from arrest, how far such a claim can be sustained, and the extent of the compensation so to be allowed the defendant, when the plaintiff appears entitled to some, though not to all that he demands.

*Special Term, January and February,* 1855.

On motion to discharge the arrest of the defendant, Arrangois.

> DANIEL LORD, *for plaintiff.*
>
> JOHN & W. H. ANTHON, *for defendants.*

HOFFMAN, Justice. The defendant, Francisco de Arrangois, having been arrested under an order made by one of the justices of this court, and given bail to the amount of $60,000, now applies to be discharged upon the insufficiency of the affidavit on which the order was granted, and upon further affidavits and documents on his own part.

The first question relates to the form of the undertaking given upon the arrest, and this materially depends upon the correct understanding of the position of the plaintiff upon the record

The right of a foreign SOVEREIGN to sue in the courts of England, upon which Lord THURLOW entertained doubts, has

NEW-YORK PRACTICE REPORTS. 3

The Republic of Mexico agt. Arrangois and others

been fully settled and sustained. In the case of *The King of Spain* agt. *Machado*, (4 *Russell*, 560, & 1 *Bligh U. S.* 60,) Lord REDESDALE speaks of it as one of the clearest cases that could be stated: "that he sues as a sovereign, either on his own behalf, or on behalf of his subjects." (*See also The Nabob of the Carnatic* agt. *The East India Company*, 1 *Vesey, jr.*, 371 ; *The King of Hanover* agt. *Wheatley*, 4 *Beavan*, 78 ; *Hullett* agt. *The King of Spain*, 2 *Bligh U. S.* 31, *and* 1 *Clark and Finelly*, 33.)

It will be seen, that in all the English cases in which the right to sue has been admitted, the plaintiff was a *monarch*, and was treated as an *individual*. The case of *The City of Berne* agt. *The Bank of England*, (9 *Vesey*, 348,) was decided upon the point of the state not having been recognized by the British government. It is also to be noticed that the bill was by a common councilman, on behalf of himself and his associates in the government. This appears from the report of the case of *Dolder* agt. *The Bank of England*, (10 *Vesey*, 353 ;) and in *Dolder* agt. *Huntingfield*, (11 *Vesey*, 283,) the suit was by individuals describing themselves as Llandamman and two Statholders of the Helvetic Republic, in whom the executive power was vested by the constitution.

When the case of *The King of Spain* agt. *Machado* was first before the court, it was held that two persons, the agents of the king, and to whom he had given a power of attorney to collect and deposit the funds, but who had no interest in the amount, could not be joined with the king as co-plaintiffs. (4 *Russell's Rep.* 225.)

The case of *The Colombian Government* agt. *Rothschild*, (1 *Simon's Rep.* 103,) is of importance in ascertaining the English rule, not merely because it was decided by a very able judge, (Sir JOHN LEACH,) but that it has received the sanction of Lord ELDON, Lord REDESDALE, and Lord BROUGHAM. (Compare the report in the house of lords in 1 *Dow. & Clark*, with that in 1*st Clark & Finelly*, 33.)

The bill was, in form, by the government of the state of Colombia, and Don Manuel T. Hutado, a citizen of such state,

and minister plenipotentiary from the same to the court of his Brittanic majesty, the place of his residence stated. On general demurrer, it was held that the bill could not be sustained. The vice-chancellor said, that a foreign state is as well entitled to the aid of the court, in asserting its rights, as any individual; but it must sue in a form which makes it possible for the court to do justice to the defendants. It must sue in the name of some public officers, who are entitled to sue in the name of the state, and upon whom process can be served on the part of the defendants, and who can be called upon to answer a cross bill. The general description of the Colombian government pre-cluded the defendants from these just rights, and no instance could be stated in which the court had entertained the suit of a foreign state, by such a description.

The English authorities appear to settle these points. That the sovereign of a foreign country may sue in the tribunals of the realm, but he sues as an individual. An action cannot be sustained in the name of his agent, although they may be regularly empowered to act in the identical business. He is the party in interest. He must swear to an answer to a cross bill, if one is required. He would be the party to be examined personally, whenever such an examination was warranted by the rules of the court.

Again: If a state sues, without the individuality of a monarch, some public officer representing it must be upon the record; and it seems that a minister plenipotentiary is not such an officer.

I cannot but think that an examination of the old cases, referred to by counsel in *The Nabob of the Carnatic* agt. *The East India Company*, will tend to prove that an ambassador may sustain an action on behalf of his sovereign, notwithstanding the doubts of Lord ROSSLYN upon the subject. (3 *Vesey*, 431.)

In *The King of Spain* agt. *Oliver*, (1 *Peter's C. C. Rep.* 217, 276,) an action for the recovery of duties, alleged to be payable to the crown, was brought in the circuit court, and decided upon its merits. It appears that an application was made for

a continuance, to take testimony under a commission, upon the affidavit of the Spanish minister.

These are all the authorities I have been able to find upon the subject; and I believe the question is entirely new in our country. The principle which pervades the English cases is marked by that spirit of equality and justice which is the inmate of English tribunals, and that principle places the sovereign and the peasant upon the same footing.

But the reason of the English rule lies deeper. It has its origin in that leading doctrine of European policy which, in the language of Guizot, places " the personification of the state in the institution of monarchy." This embodiment of the commonwealth in the individual has given way, over the continent of America, to the idea of the concentration of the power of the people in an abstraction. Legitimate sovereignty does not find its representative in a king with his personality, but in a republic with its idealism.

Still there is the same brotherhood and communion of states to be recognized. The same family of nations, though with different names and different forms, exist; and their rights, and their responsibilities, must be forever the same. The catholic law of nations is identical in its application to all.

We must then admit these recognized governments to sue in our courts under their federative title, and adapt our forms of proceeding, if possible, so as to do justice to all parties; or we must allow an individual representative, clothed with competent authority from his government, to act on its behalf, and thus have a party on the record who can be strictly subjected to those forms.

In my opinion, the action can be maintained in the name of the republic as an aggregate body; and the modes of proceeding in cases of foreign corporations, and of other states of the union may be resorted to for the regulations of the practice.

Before the Revised Statutes had embodied the law into an express provision, Chancellor KENT had decided that a foreign corporation could file a bill in our court of chancery, as well as sustain a suit at law. (*Silver Lake Bank of Pennsylvania* agt.

*North*, 4 *John. C. R.* 371.) Such a suit was brought in this court in *The Holyoke Bank* agt. *Hastings*, (4 *Sandf. Rep.* 675.)

Our highest court has also settled, that either of the states of the Union may sue in our state courts; and difficulties of practice are not found insuperable. (*State of Illinois* agt. *Delafield*, 2 *Hill*, 159; 8 *Paige*, 527; *State of Indiana* agt. *Woram*, 6 *Hill*, 36.)

With these views, I consider that the objection to the undertaking is not tenable. The language of the Code admits of the court treating an undertaking, signed by an admitted agent of a foreign government appointed to sue, to be an undertaking on the part of the plaintiff. In the case of *Richardson* agt. *Crary*, (1 *Duer*, 666,) referred to by the counsel of the defendant, the instrument was executed by sureties alone; neither by the plaintiff nor by any one on his behalf.

2d. The question, whether the defendant filled any, and what office under his government, and the time of the execution of these services, is next to be considered. It becomes of importance in any view of the application.

In the affidavit of General Almonte, on which the order of arrest is founded, it is alleged that, at the time of the reception of the monies mentioned, the defendant was an officer and agent of the republic, having, as such, a salary of $3,000 per annum; that he acted in the business only as an officer or agent having a stated salary; and that the defendant, after receiving the money, resigned his office and employment. The affidavit avoids stating what that office was.

In the letter from the office of secretary of state, and of the department of foreign relations, dated July 17th, 1854, regulations are prescribed as to the salaries of consuls, and the minister plenipotentiary directed to carry them into effect. In pursuance of these instructions, General Almonte addressed an official letter to the defendant, under date of the 2d of August, 1854, asking information as to his salary, and entitling him, " The Consul General of the Republic," &c., &c.

On the 8th of August, 1854, the defendant signs a receipt for his salary, as Consul General in the United States, for one

NEW-YORK PRACTICE REPORTS.　　　7

The Republic of Mexico agt. Arrangois and others.

year in advance; on the 4th of August the treaty money was paid to him.

In two of the series of letters addressed to the defendant from the various departments of the government, dated the 19th of July, 1854, and empowering him to receive the money, he is addressed as "Consul General of the Republic in the United States."

This is the case upon the documents, apart from the defendant's affidavit. It follows from them that the defendant was, at the time of his employment and agency, the Consul General of the republic of Mexico, and continued so until the 8th of August. It is manifest, that if he was not Consul General, he was not acting, at the time of such agency, in any other station as an officer on a salary. It is also clear, that if he remained Consul General at the commencement of this action, the court has not any jurisdiction of the cause.

The doubts heretofore existing as to the operation of the act of congress of September 24, 1789, are terminated by the decision in the court of appeals in *Valarino* agt. *Thompson*, (3 *Selden's Rep.* 576.) It is there settled, not merely that a consul does not lose his exemption by reason of omitting to plead it, but that the ground of his exemption from a suit in a state court is not a personal privilege, nor even the right of his sovereign; but that it is the right and privilege of the United States that he should be sued in the federal courts. Under an admitted constitutional power, the state courts are excluded from jurisdiction. The case of *Flynn* agt. *Stoughton*, (5 *Barb. S. C. Rep.* 113,) is then over-ruled.

In this view, the importance of the plaintiff's allegation, that he resigned the office which he had held *after the reception of the money* is apparent. The receipt of the 8th of August, four days after the money was paid to him, speaks of his salary as consul being paid in advance. The Mexican minister, on the 2d of August, addresses him as Consul General. I should not know how to resist the presumption that he continued such consul to the present hour, if his own affidavit does not remove

the difficulty.   After a careful examination of it, I am of opinion that it is sufficient to do so.

He says, that he was appointed Consul General, &c., to reside in New-York, and was afterwards established in New Orleans. That he received instructions, dated the 14th of July, to leave to the Vice-Consul the discharge of his duties at New Orleans, and to proceed to New-York as a special commissioner, to take the monies from the hands of the plaintiff, and, if necessary, to assume his place as minister; that he received such instructions on the 25th of July, *abandoned* his office, and proceeded to New-York.   He says, that he held no office at all properly so called when he commenced performing the duties in question, the consulate being a commercial agency, and its functions having been renounced by him, and *never again assumed.*   He also explains away his receipt for his salary as consul.   Whether successful or not, it is of moment to show his renunciation of the character.

It is remarkable that no formal act of official resignation is exhibited by the defendant; and it is left doubtful whether at this moment he is not *de facto* the consul of his government.

I am inclined, however, to think that, for the purposes of this suit, his admissions are sufficient to prevent the act of congress from applying, and to authorize the action in this court.   That he will be hereafter absolutely estopped from claiming his privilege, even if he now possesses the office.   It then results that the plaintiff must take his statement of renunciation of the office, or the presumption must be that he retains it.

If this is the case, the Mexican government must submit to consider him as a special agent or commissioner to receive the money, and as a banker to meet the drafts, and disburse the funds.   The authorities there cited do not bear directly upon the case, for there was no official character belonging to the defendant with a salary attached to it.   It may, however, be remarked, as to those cases, that a remuneration was provided for the services, directly or indirectly, by sanction of law.   If there was no proper officer to perform them, or he was dis-

abled, the one employed succeeded to the duty, and took the compensation allowed for its performance. (*United States* agt. *M'Daniel*, 7 *Peters*, 1; *Same* agt. *Ripley*, *id.* 18; *Andrews* agt. *United States*, 2 *Story's Rep.* 208; *United States* agt. *Duval*, *Gilpin*, 356; *United States* agt. *Gratiot*, 15 *Peters*, 336; *United States* agt. *Buchanan*, 8 *Howard*, 102.)

Thus, then, the case is narrowed down to one of a special agent, receiving money for his employer, authorized and required to deposit it in his own individual name, where it could be readily appropriated, and required to meet the drafts of his principal upon it. He performs this office and business to the whole extent of the fund in his hands, except a balance which he claims to retain as a proper commission for his services.

The construction of the second subdivision of the 179th section of the Code, I apprehend is this: That a defendant may be arrested in an action *for money received*, where he is a factor, attorney, agent, &c., or other person in a fiduciary capacity. And again, that the same designated persons may be arrested for property embezzled, or fraudulently misapplied by them. There are two cases for the arrest, and the enumerated persons may be arrested in either of them.

It is of importance here to notice the distinction which exists as to cases under the 179th section. In one class, the order of arrest may be made upon facts, which may be entirely independent of the cause of action; which are to be stated in affidavits, and need not be stated in the complaint, and where the arrest may take place after the cause has actually been tried. (*Cheeny* agt. *Garbut*, 5 *Howard*, 468; *Field* agt. *Morse*, 7 *Howard*, 12; *Gardner* agt. *Clark*, 17 *Barb*. 646; *Corwin* agt. *Freeland*, 2 *Selden*, 502; *Lee* agt. *Elias*, 3 *Sandf. S. C. Rep.* 736.)

Under subdivision four, for example, the action may be for goods sold and delivered, and the arrest be founded upon fraud in obtaining the goods. The latter may entirely fail, and the former succeed. They are so distinct that the ground on which the arrest is to be obtained ought not to appear in the complaint.

On the other side, where a defendant is sought to be arrested

10

NEW-YORK PRACTICE REPORTS.

The Republic of Mexico agt. Arrangois and others.

as an agent receiving money, the ground of action and the ground of arrest are identical. The plaintiff cannot obtain the one, unless he appears entitled to succeed in the other. If his cause of action is shown to be unfounded, his cause of arrest must fail. If the affidavits destroy the allegation of a fiduciary character, the arrest cannot be sustained, although that will not terminate the suit. In this respect the analogy to an old injunction cause is close. The answer may be so full and explicit as to require the dissolution of an injunction, but yet the suit proceed, for the testimony might disprove it.

An opinion has been entertained by several judges, that the arrest must be sustained, unless a case is made out showing that the plaintiff cannot possibly succeed in his suit. I speak, of course, of cases of the present class. It strikes me to be a better rule—one more sanctioned by analogy, as it is more in favor of liberty—to hold that the arrest shall not be sustained, where the defendant raises a fair legal presumption that his claim may be supported.

We are to recollect, in these cases, that the Code has introduced a new element in our law upon this subject. A case of arrest—of bail or no bail—may be decided upon affidavits which tend to decide the cause as then presented. The court of appeals recognize this to be the result of their own construction of the Code. (2 *Selden*, 562.) The delicacy and difficulty of such a position for a judge, is daily experienced.

Applying the law thus stated to the facts of this case, as now presented, I have come to the conclusion that the defendant shows a right to a compensation, by way of commission, from his government.

The case of *Gardner* agt. *Dunbar*, (17 *Barb. Rep.* 644,) referred to by counsel, is very pertinent. The distinction is there taken, between an agency merely to sell and account for the balance immediately after deducting commissions, and where there is a general charge of the principal's business, paying debts, and assuming liabilities for him, and then to sell the property. The only agency that the Code refers to was one to sell and collect. The agency to pay out and superin-

tend for the plaintiff, was the principal part of the defendant's duty. The plaintiff looked to him as a debtor, rather than as an agent.

The Mexican government, in this case, entrusted what it deemed a duty of delicacy and high importance to the defendant. It has been accomplished with admitted skill and promptitude, and, unless there is in this present claim a breach of faith and trust, with acknowledged fidelity. The services were of a mercantile nature. He requires a compensation in money, and mercantile law and usage sanction it.

But the line of reasoning, and the authorities which give the power, and make it the duty of the court, to judge of the right of action upon such a motion, require it to decide how far a claim can be sustained, when the plaintiff appears entitled to some, though not to all that he demands.

It is my duty in this case to pass upon the extent of the compensation to be allowed, upon all the facts before me, as well as upon the right to any compensation. And, in my opinion, the sum withheld is disproportionate to the services rendered. I am of opinion that one half per cent. would be proper and sufficient; and it therefore results that the amount of the security in this case should be reduced to $30,000, and the order of arrest should be so far modified.