## FISH *v.* UNITED STATES.[1]

*(District Court, E. D. New York.* October 29, 1888.)

1. DISTRICT AND PROSECUTING ATTORNEYS—UNITED STATES ATTORNEY—AUTHORITY TO EMPLOY STENOGRAPHER.

The general authority to prosecute delinquents, given to a United States district attorney by Rev. St. § 771, authorizes him to employ a stenographer in criminal cases, and to render the United States liable to pay a reasonable compensation for services rendered, without first obtaining the authorization of the attorney general of the United States.

2. SAME—AUTHORITY OF ATTORNEY GENERAL.

Section 362, Rev. St., conferring upon the attorney general power to superintend any criminal prosecution instituted by the district attorney, does not authorize the attorney general to control the action of the district attorney in criminal cases by general regulations.

Petition for Compensation for Services as Stenographer.

In this case I find the following facts: (1) That the petitioner, at the time of the filing of the petition herein, was a resident of the county of Queens, in the Eastern district of New York; (2) that the petitioner was employed to take stenographic notes of the testimony given in criminal cases in the courts of the United States for the Eastern district of New York, from the year 1882 to the 9th day of December, 1887; (3) that the petitioner performed such duties under the employment and direction of the duly appointed attorney for the United States for the Eastern district of New York; (4) that the petitioner from time to time presented bills to the United States for his services as aforesaid, which bills, including the items in suit, were approved and allowed by the United States attorney; (5) that until June, 1885, the petitioner's bills, so rendered and approved, were paid by the United States of America through the treasury department by treasury drafts drawn on the subtreasurer at New York to the order of the petitioner; (6) that no notice was given to the petitioner that his employment was unauthorized; (7) that the services charged for, and for which the petitioner prays judgment herein, were necessary to the proper conduct and economical disposition of the criminal cases of the United States in the Eastern district of New York; (8) that the services so rendered by the petitioner were accepted by the United States of America; (9) that the services so rendered by the petitioner and accepted by the United States were reasonably worth the sum of $909.20; (10) that on or about the 20th day of December, 1887, the petitioner duly demanded of the proper department of the government of the United States of America payment of said sum of $909.20, which was refused, and no part thereof has been paid. The following are my conclusions of law: (1) That the United States of America employed the petitioner to perform the work and render the services, for the value of which he prays judgment herein; (2) that the petitioner is entitled to judgment against the United States of America for the sum of $909.20,

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

and $47.74 interest, amounting in the aggregate to $956.94, together
with the costs provided by section 15 of the act of March 3, 1887, to be
taxed.

 *G. E. P. Howard*, for petitioner.

 *Mark D. Wilber*, for the United States.

 BENEDICT, J., (*after stating the findings as above.*) This is the case of a pe-
tition instituted under the provisions of March 3, 1887, (24 St. at Large,
c. 359, p. 505,) to recover of the United States the sum of $909.20, for
services rendered by the petitioner to the United States in taking steno-
graphic notes of the testimony in criminal trials in the circuit and dis-
trict courts of the United States for the Eastern district of New York.
The facts are not in dispute. The evidence shows that the petitioner,
since 1882, has been employed continuously in the courts of the United
States for the Eastern district of New York to take stenographic notes of
the testimony given in criminal cases in those courts. This duty has
been performed under the employment and direction of the attorney of
the United States for the Eastern district of New York. Up to June,
1885, the petitioner from time to time rendered bills against the United
States for his services, which bills were certified by the district attorney,
and paid by the treasury department by treasury drafts to the order of
the petitioner. On the 24th of June, 1885, a change was made in the
office of the attorney for the United States for the Eastern district of
New York, and Mark D. Wilber was appointed attorney in place of the
former attorney, Mr. A. W. Tenney. Thereafter Mr. Wilber requested
the petitioner to continue in the service of the United States as thereto-
fore, and accordingly upon the request of the attorney the petitioner con-
tinued to render his services to the United States at various terms of the
court down to the 9th day of December, 1887. For these services down
to the 9th day of December, 1887, the petitioner from time to time pre-
sented bills to the United States as heretofore. These various bills, which
included the items in suit, were from time to time approved and allowed
by Mr. Wilber, then United States attorney. No notice was ever given
to the petitioner that his services were not required, nor was he informed
that his employment was unauthorized; and it was assumed by the
United States attorney that the petitioner's bills, approved and rendered
from time to time, were paid as rendered. The evidence shows that the
services charged for in these bills were necessary to the proper conduct
and economical disposition of criminal cases in the Eastern district of
New York. It appears also that the charges made therefor are reasona-
ble and proper, and no objection has been raised to the bills on the ground
of amount. On the 31st day of December, 1887, the following com-
munication respecting these bills was addressed to the petitioner by the
attorney general:

 "*James H. Fish, Esq., New York City, N. Y.*—SIR: Your letter of the
20th inst., with accompanying account, has been shown to me. The account
is for services by yourself as stenographer in the United States court at Brook-
lyn, New York. I have examined the account thoroughly, and reply as fol-

lows: As there is no previous authority from the department to contract this expense, so far as I can see, I am entirely without authority to allow the claim. Very respectfully, A. H. GARLAND, Attorney General."

No allowance of the claim has since been made by the attorney general, and the petitioner has for that reason never been paid. Upon these facts I am asked to determine whether or no the United States is liable to the petitioner for the services in question.

In regard to the communication of the attorney general, above set forth, it is to be observed that no opinion is expressed as to the liability of the United States to pay the petitioner. The attorney general simply declined to allow the claim for want of power, and the question presented is whether any allowance of the claim by the attorney general is necessary to create a liability on the part of the United States to the petitioner. The petitioner was employed to render these services by the attorney of the United States for the Eastern district of New York. If the district attorney, in the absence of a direction to that effect from the attorney general, had authority to employ him, the United States is liable; otherwise not. The powers and duties of an attorney of the United States are described in section 771 of the Revised Statutes as follows:

"It shall be the duty of every district attorney to prosecute, in his district, all delinquents, for crimes and offenses cognizable under the authority of the United States."

This language seems to me sufficient to authorize the employment by the district attorney of a stenographer to take down the testimony given in court in the course of prosecutions for crimes cognizable under the authority of the United States. Such services, as shown by the evidence, are necessary for the proper conduct of these cases by the district attorney. Without the services of the petitioner the district attorney could not properly conduct the prosecution in question. The authority to prosecute by implication includes authority to secure a record of the testimony given in the prosecution as a necessary incident to the discharge of the duty imposed by law. The attorney of the United States is not a member of the department of justice. He is a separate judicial officer. His powers and duties are defined by the statute above quoted. He is, of course, limited in the exercise of his powers by the law, but, as was held by the supreme court in *U. S.* v. *Macdaniel*, 7 Pet. 1, it does not follow that it is necessary to show a statutory provision for everything he does. And as was further said in the same case:

"Whilst the great outlines of the movement of the government may be marked out, and limitations imposed on the exercise of its powers, there are numberless things which must be done that can neither be anticipated nor defined, which are essential to the proper action of the government. Hence, of necessity, usages have been established in every department of the government, which have become a kind of common law, and regulate the rights and duties of those who act within their respective limits. And no change of such usage can have a retrospective effect, but must be limited to the future."

These remarks are pertinent here, because it appears in evidence that for a series of years the authority exercised by the present district at-

torney to employ the stenographer in the prosecution of criminal suits had been approved by the government, and the petitioner's bills for compensation therefor rendered from time to time have been paid by the treasury department.

I have been referred to no statute requiring a previous authorization from the attorney general to enable the district attorney to discharge the duties imposed upon him by section 771. No such limitation of the power of the district attorney with reference to the employment of the petitioner is to be derived from the provisions of section 362. By that section the attorney general is authorized to exercise general superintendence and direction over the attorneys and marshals of all districts and territories, as to the manner of discharge of their respective duties, and the section no doubt confers upon the attorney general power to superintend any criminal prosecution instituted by the district attorney, and to direct the district attorney in regard to the method of discharging his duties in any particular prosecution instituted by him. But it does not, in my opinion, authorize the attorney general to control the action of the district attorney in criminal cases by general regulations. The supervision and direction contemplated by section 362 must, as I think, be a particular instruction, given in a particular case, and based on the facts of the particular case. To hold otherwise would in many instances deprive the court of the aid of counsel, learned in the law, which is contemplated by the statute, and substitute in place of counsel a set of general regulations issued by the attorney general; and in some cases the ends of justice would be defeated by such a practice. A general regulation of the department of justice that all district attorneys should in all cases refuse to consent to any postponement of a trial, should never admit a fact, should always move for the infliction of the extreme penalty of the law, would hardly be upheld. The statute must have some limit; and one proper limitation, as it seems to me, is to require, for the validity of any direction by the attorney general in criminal cases, that it be made in a particular case, and with reference to the duties of the district attorney in that particular case. These remarks are perhaps not required by the facts here before the court, for there is no evidence in this case either of any direction from the attorney general to the district attorney in regard to any of the cases where the testimony was taken down by the petitioner, nor of any general direction instructing district attorneys in the matter of incurring expense in criminal trials. No instruction or direction of the attorney general, of any kind, has been put in evidence. So far as this case stands, therefore, the petitioner's right to recover rests upon the statutory authority of the district attorney to employ a stenographer, in the absence of any direction or instruction from the attorney general. As before stated, I consider the statutory authority of the district attorney, conferred upon him by section 771, sufficient to authorize the employment of the petitioner in the manner stated. The authority of the district attorney to employ a stenographer in criminal cases seems to me as clearly to be derived from section 771 as his right to subpœna a witness, and thereby render the United States liable for witness fees.

The equity of the petitioner's case is strong. He rendered the services in question in the same manner in which he had rendered similar services for a long period of time, for which he had always been paid by the government. No intimation was conveyed to him that his employment was considered irregular. His services were accepted in behalf of the government, and his bills allowed by the district attorney; and then, after receiving the benefit of the services, the government refuses to pay him anything because the district attorney had not, before employing him, obtained from the attorney general authority so to do. If it were necessary, such authority in the district attorney, in this instance, could easily be implied from the course of dealing with the petitioner in paying his bills incurred by the former district attorney. But it is not necessary. In my opinion the district attorney was not bound to apply to the attorney general for authority to employ the petitioner; and when, in the absence of any direction from the attorney general, he did employ the petitioner, and accept his services in behalf of the United States, he thereby rendered the United States liable to pay the reasonable compensation for those services, which the petitioner now claims. As says the supreme court in the case already referred to:

"There may be cases in which, the services having been rendered, a compensation may be made within the discretion of the head of the department; and in that case the court and jury will do, not what an auditor was authorized to do, but what the head of the department should have done in sanctioning an equitable allowance."

My opinion is, therefore, that the petitioner is entitled to the relief he asks. A statement of facts as found by me, and of my conclusions of law, required by the statute to be made, is filed with this opinion.