# Providing Government Films to the Democratic National Committee or Congressmen

Government motion picture films may be made available to the Democratic National Committee or congressmen when public release is authorized by statute.

In the absence of statutory authority, government films may be made available to the Committee or congressmen on a revocable loan basis if a public interest can be shown to justify such loan and if the films are available equally to other private organizations.

It would be improper for any government agency to produce a film for the specific purpose of making it available to the Democratic National Committee or to congressmen.

December 26, 1963

MEMORANDUM OPINION FOR THE ASSISTANT SPECIAL COUNSEL
TO THE PRESIDENT

This is in response to your memorandum of June 15, 1963, requesting my views upon the use for non-governmental purposes of motion picture films produced by federal departments and agencies. Your request has reference to a memorandum from Paul Southwick, dated June 3, 1963, in which he outlines a proposed use of government motion picture films documenting activities of the Kennedy administration. His memorandum states in part:

> I am requesting Federal agencies wherever possible to obtain both still and motion picture films to document activities of the Kennedy Administrative, with particular emphasis on human interest. Example: films showing men being put to work on Accelerated Public Work Projects.

> The intended uses of movies include two basic ones: by Congressmen and Senators on their local "public service" TV programs, and later, in a documentary or series of documentaries, depicting progress under the Kennedy Administration.

> The latter would have a partisan use[1] and will probably be produced, directly or indirectly, in coordination with the Democratic National Committee. It is hoped that professional help would be donated for editing, arranging and narrating.

> Question: Are there any legal pitfalls in regard to such use of government films? I don't see any problem in regard to stills—they

---

[1] I assume from this statement that the inquiry has no relationship to any films which might be made or released for historical rather than partisan purposes.

are public property, publicly released, for use by anyone. Still pictures are already being used regularly in the 'Democrat' and I assume this is proper. With movies, we would want to excerpt, rearrange and edit. Could government movies be made available to DNC for such purpose? If not, could they be made available to some other non-government group for essentially the same purpose?

With respect to still pictures, it appears that there is no legal problem since Mr. Southwick indicates that he refers only to pictures "publicly released, for use by anyone." Consequently, this memorandum is confined to a discussion of the use of government motion picture films.

### I. Summary

Government motion picture films may be made available to the Democratic National Committee or congressmen in circumstances in which public release is authorized by statute. In the absence of statutory authority, government films may be made available to the Committee on a revocable loan basis if a public interest can be shown to justify such loan and if the films are available equally to other private organizations. However, it would be improper for any government agency to produce a film for the specific purpose of making it available to the Democratic National Committee or to congressmen, and, as a matter of policy, an arrangement which creates the suspicion that the films were produced for such a purpose should be avoided.

### II. Discussion

Some federal agencies have specific statutory authority to release government films for public use. However, specific statutory authorization for general public release of government films appears to be limited to a few agencies. For example, the Agriculture Department is authorized to loan, rent or sell copies of films. 5 U.S.C. § 554 (1958). Also, the Secretary of the Interior is authorized to prepare for free distribution or exhibit or to offer for sale films pertaining to the National Fisheries Center and Aquarium. 16 U.S.C. § 1052(b)(2) (Supp. IV 1958).

Statutory permission for the public release of films may be restricted. For example, under the United States Information and Educational Exchange Act of 1948, the United States Information Agency ("USIA") is authorized to produce films for "dissemination abroad." Pub. L. No. 80-402, § 501, 62 Stat. 6, 9 (1948) (codified at 22 U.S.C. § 1461 (1958)).[2] In addition, provisions of some appropria-

---

[2] During the visit of Mrs. John F. Kennedy to India and Pakistan, the USIA produced two films for "dissemination abroad," one of the First Lady's visit to Pakistan and one of her visit to India. Pursuant to authority contained in 22 U.S.C. § 1437, the USIA contracted with United Artists for the production of a third film of Mrs. Kennedy's trip. This film, utilizing in part government footage, was produced at

tion acts forbid use of appropriations for publicity or propaganda purposes. For example, the Departments of State, Justice, and Commerce, the Judiciary, and Related Agencies Appropriation Act for 1963, Pub. L. No. 87-843, 76 Stat. 1080, contains in title VII the following provision:

> No part of any appropriation contained in this Act shall be used for publicity or propaganda purposes not authorized by Congress.

*Id.* § 701.

A systematic practice of a government agency to produce or obtain films and turn them over to a political organization might well raise questions as to the use of appropriated funds under such a provision.

Absent specific statutory authority, the right of the head of a department or agency to give, lend, sell, or otherwise dispose of government film to a private organization would appear to be limited by constitutional and statutory prohibitions and by the necessity for a determination as to whether the proposed disposition would be in the public interest. Article 4, Section 3, Clause 2 of the Constitution gives to the Congress the power "to dispose of . . . Property belonging to the United States."

Under Article 4, Section 3, Clause 2 of the Constitution, "property once acquired by the Government may not be sold, or title otherwise disposed of, except under the authority of Congress." *Grant of Revocable Licenses Under Government-Owned Patents*, 34 Op. Att'y Gen. 320, 322 (1924). Attorney General Stone stated that "this prohibition extends to any attempt to alienate a part of the property, or in general, in any manner to limit or restrict the full and exclusive ownership of the United States therein." *Id.* As a consequence of this constitutional prohibition, a government agency was held not to have authority to sell maps to individuals or private companies without statutory authorization. *Puerto Rico Reconstruction Company—Sale of Prints of Survey Map*, 39 Op. Att'y Gen. 324, 325 (1939).

Congressional authority appears to be unnecessary, however, to permit the head of a department or agency[3] to grant to individuals or organizations revocable licenses to use government property for a purpose beneficial to the government or in the public interest. The distinction between alienation of government property and the granting of a revocable use license in the public interest was discussed by Attorney General Stone:

---

the expense of United Artists and was commercially released through the Selzer Company. The government benefited from this arrangement by obtaining a third film of Mrs. Kennedy's trip produced at the expense of a private company and by use of United Artists' distribution facilities in countries in which USIA has no facilities. The government footage was loaned to United Artists, which returned the original to the government after making copies. Dissemination of one of the films in the United States was admitted by USIA not to be authorized.

[3] *See infra* note 4.

. . . And it has been uniformly held that revocable licenses, in the public interest, for the use of Government property, could be given by the head of the appropriate Department. [*Revocable Licenses*, 22 Op. Att'y Gen. 240, 245 (1898); *Government-Owned Site at Aqueduct Bridge*, 30 Op. 470, 482 (1915); *Transfer of Property from One Government Department to Another*, 32 Op. 511, 513 (1921); *Use of a Portion of Camp Lewis Military Reservation by the Veterans' Bureau*, 33 Op. 325, 327 (1922).] The power has been frequently exercised by such Departments in accordance with these opinions.

When the law has been so construed by Government Departments during a long period as to permit a certain course of action, and Congress has not seen fit to intervene, the interpretation so given is strongly persuasive of the existence of the power. . . . In [*United States v. MacDaniel*, 32 U.S. (7 Pet.) 1, 14 (1833)], it is made clear that the head of a Government Department does not have to show statutory authority for everything he does. Reasonable latitude in the exercise of discretion is implied. "Usages have been established in every Department of the Government, which have become a kind of common law, and regulate the rights and duties of those who act within their respective limits . . . . Usage can not alter the law, but it is evidence of the construction given to it." . . .

. . . .

Under section 161 of the Revised Statutes, the Head of each Department regulates the custody, use, and preservation of property pertaining to it. So that it may be said that while the Constitution prohibits the alienation of the title, ownership or control of Government property without Congressional sanction, Congress has given the Head of a Department authority and control over the "use" and preservation of such property in his charge.

*Grant of Revocable Licenses*, 34 Op. Att'y Gen. at 326–27. *See also Government Research Facilities—Use by Graduate and Faculty Scientists—National Bureau of Standards Cooperative Program*, 36 Comp. Gen. 561, 563–64 (1957).

It would seem to follow from the foregoing that, subject to appropriate conditions, the head of a department or agency[4] may permit the use of government films

---

[4] Undoubtedly, the head of an agency, as well as the head of a department, possesses authority to permit non-governmental use of official property. Although in *Grant of Revocable Licenses*, 34 Op. Att'y Gen. 320, Attorney General Stone relied in part upon Rev. Stat. § 161 (5 U.S.C. § 22), which authorizes the head of an executive department to regulate the custody, use and preservation of property belonging to that department, it does not appear that the Attorney General's opinion would have been different if Rev. Stat. § 161 had not been in force. Consequently, the opinion seems to be

by private organizations if a public interest can be demonstrated. If a government decision should be made that public dissemination of any film is in the public interest, the Democratic National Committee or congressmen would be entitled to access to the film equally with any other private organization.

This conclusion does not, however, dispose of all of the questions raised by Mr. Southwick's memorandum. He states that the films are intended to be used by congressmen in their "public service" broadcasts and for a series of documentaries to be a produced in coordination with the Democratic National Committee which would probably have a "partisan use." Nothing in the conclusion stated above would justify a government agency in producing or collecting films for such purposes. Statutory or other authority to make or collect films and to distribute them to the public does not, as I have stated, preclude distribution to persons or organizations which may use them for partisan political purposes. However, it can hardly be contended that such authority extends to production or collection of films in order to foster such purposes.[5] As a realistic matter, films made or collected for use either by a political committee or for a congressman's "public service" broadcasts would in effect be produced or assembled for partisan political purposes.

I might add that a systematic practice of government agencies' supplying films to be used for private political purposes raises some questions which should be seriously considered. I think that no question at all is presented when it is the mission of a government organization, such as the Library of Congress, to maintain a film or picture library, with prints available to the general public. Those who wish to make use of its facilities for their private political purposes are as entitled to do so as anyone is. But where the collection or production and distribution of films is incidental to the basic mission of any agency, a close working relationship with persons or organizations who use the films for political purposes is apt to create the suspicion that, in the first instance, they were made or collected for those purposes. Obviously this should be avoided.

NORBERT A. SCHLEI
*Assistant Attorney General*
*Office of Legal Counsel*

---

broad enough to support the right of the head of an agency to allow private use of government property subject to appropriate conditions. In this connection, it is of interest that the Comptroller General has expressed the opinion that the Federal Communications Commission, an independent agency, may issue a revocable license for the use of government property. *Public Property—Administrative Authority to Dispose Of*, 22 Comp. Gen. 563 (1942).

[5] With respect to agencies subject to statutory limitations on the use of appropriated funds for publicity or propaganda purposes, such activity might also violate the provisions of the relevant appropriation act.