**TOLEDO, P. & W. R. R. v. STOVER et al.**

Civil Action No. P–380.

District Court, S. D. Illinois, N. D.

May 19, 1945.

James A. Velde, Gardner Carton & Douglas, of Chicago, Ill., and Clarence W. Heyl, of Peoria, Ill., for plaintiff.

Francis M. Shea, Asst. Atty. Gen., Howard L. Doyle, U. S. Atty., and Marks Alexander, Asst. U. S. Atty., for defendant.

LA BUY, District Judge.

The plaintiff is the owner of a railroad together with right of way, buildings, equipment, etc., necessary to the operation thereof. During the years 1940 and 1941 plaintiff was engaged in a labor dispute with certain of its employees, and refused to submit this dispute to arbitration in accordance with the provisions of the Railway Labor Act, 45 U.S.C.A. § 151 et seq., although it had sought to settle the dispute by negotiation and mediation. On December 28, 1941, a strike was called by plaintiff's employees. Plaintiff thereupon filed its suit in this court for the issuance of an injunction to restrain its employees, conductors, yardmen, enginemen and firemen from interfering by violence or threats of violence with its property and interstate railroad operations. An injunction as prayed was granted by this court. On appeal the action of this court was affirmed but on certiorari to the Supreme court, the injunctional order was reversed. Brotherhood of Railroad Trainmen, Enterprise Lodge, No. 27, et al. v. Toledo, Peoria & Western Railroad, 321 U.S. 50, 64 S.Ct. 413, 88 L.Ed. 534, 150 A.L.R. 810.

While that litigation was pending and the United States being then in a state of war with Germany, Japan and Italy, on March 21, 1942, the President of the United States promulgated Executive Order No. 9108, which recited that the national interest and security demanded that there be no interruption in the flow of goods essential to the effective prosecution of the war, that a labor dispute existed between the employees and the management of plaintiff since December 29, 1941, which had interrupted the transportation of goods essential for the prosecution of the war, that the plaintiff had refused to submit the dispute to arbitration despite urgent requests by the National War Labor Board and by the President that it do so, that under the circumstances it was essential that the plaintiff company be operated by or for the United States in order to assure successful prosecution of the war, and, therefore, the President directed that the Director of the Office of Defense Transportation take immediate possession of all of the property of plaintiff, and to operate its railroad in such manner as he deemed necessary for the successful prosecution of the war, through or with the aid of such public or private agencies, persons or corporations as he might designate; and said directive further provided that possession and operation of plaintiff's property should be continued only until the President determined that such temporary possession and operation was no longer required for successful prosecution of the war.

Thereafter Joseph B. Eastman, then Director of the Office of Defense Transportation, issued his order No. 1 dated March 21, 1942, appointing John W. Barriger as Federal Manager of plaintiff's railroad property, with full authority, subject to the direction of said Director, to take possession

of plaintiff's railroad property, and to operate or arrange for the operation of the same. On March 22, 1942, said Barriger took possession of all of plaintiff's properties as Federal Manager thereof. On January 1, 1943, said Director of the Office of Defense Transportation by his order No. 2 appointed the defendant, Holly Stover, as Federal Manager of the properties of plaintiff, in place of said John W. Barriger, and by the same order revoked the prior appointment of said John W. Barriger, as Federal Manager. Holly Stover, thereupon, took possession of all of the properties of plaintiff and thereafter continued in possession and control thereof.

On March 24, 1943, the President amended Executive Order No. 9108 with his Order No. 9320 of that date, this amendment providing for the making of money advances by the Director of the Office of Defense Transportation from the net cash earnings of his operation of the railroad. On December 27, 1943, the President by his Executive Order No. 9412 took possession of all common carriers located in the continental United States together with any and all appurtenances used in connection therewith, except certain non-operating properties. Said possession was taken through the Secretary of War on December 27, 1943, who was directed to manage and operate or arrange for the management and operation thereof. This order provided for possession and control of plaintiff's railroads and properties. On December 27, 1943, the Secretary of War took possession of plaintiff's railroad and properties and gave notice thereof. This possession and control was continued by the Secretary of War until January 18, 1944, when the Secretary of War, pursuant to Executive Order No. 9412, determined that continued possession, operation and control by the United States of the carriers taken and assumed by or pursuant to that order were no longer required to prevent interruption of transportation service. The Secretary of War, thereupon, delivered possession and control of plaintiff's railroad and properties to the Office of Defense Transportation, and through said Office to the defendant, Holly Stover, who had been Federal Manager as above set forth.

Contending that the order of the Secretary of War, issued January 18, 1944, relinquished all control of plaintiff's railroad and properties, plaintiff made a demand upon the Secretary of War that its property be turned back to it but this demand was refused and the property turned back to the status it occupied prior to the order of December 27, 1943.

Based upon the above facts, plaintiff alleged in its complaint that Executive Order No. 9412 superseded Executive Order No. 9108; that Order No. 9108 became of no further force or effect when the order of January 18, 1944, issued by the Secretary of War became effective; and that possession and control of plaintiff's properties should have been turned over to plaintiff and not to the Office of Defense Transportation. Plaintiff further contends that Executive Order No. 9108, which provided for the taking of possession of plaintiff's properties, made no provision for the payment of just compensation for such taking; that plaintiff has not been paid or received any compensation since March 22, 1942, because of said taking and the continued possession of same; that the making of additions and betterments to the properties without plaintiff's consent is unlawful; and that under such circumstances said Orders were unlawful and in violation of the Fourth and Fifth Amendments to the Constitution of the United States and also in violation of Sections 2, 6 and 13 of Article II, of the Constitution of the State of Illinois.

Plaintiff filed its complaint in the Circuit Court of McDonough County, seeking a temporary restraining order against the making of certain proposed betterments and additions, and for an order directing the return to plaintiff of all of its properties. The defendants by proper action caused this suit to be removed to this court.

The plaintiff in this court presented its motions for a temporary restraining order enjoining the defendants from making any expenditures for the proposed betterments and additions. This court (Judge J. Leroy Adair presiding) entered an order on July 24, 1944, denying the motion of plaintiff for a temporary restraining order.

The defendants filed herein their motion to dismiss the complaint and on this motion oral arguments were heard by the court, briefs were filed by both parties, and the court took the matter under advisement. The defendants' main contentions for a dismissal of the complaint are (a) that the suit is an attempt to try the United States and disturb its possession of property behind its back, and an attempt, by indirection to ignore and prejudice the interests

of the United States; (b) that the State court had no jurisdiction of this cause, and as a removed cause this court has no jurisdiction of the cause; and (c) that plaintiff has sustained no injury which is not compensable in money, and it has an adequate remedy therefor in the Court of Claims of the United States.

The plaintiff's contentions are (a) that there was no authority in law for the issuance by the President of Executive Order No. 9108 under which defendants purport to hold possession; (b) that possession of the railroad by the United States, whether under Executive Order No. 9108, or the order of December 27, 1943, was legally terminated by the Secretary of War on January 18, 1944; and (c) that defendants' possession and control of the railroad is unlawful because no provision has been made for the prompt payment of reasonable, just and adequate compensation to the plaintiff.

A decision as to the plaintiff's contentions (a) and (b) will be decisive of defendants' contentions (a) and (b) because the questions involved are in effect the same.

The Act of August 29, 1916, 39 Stat. 645, 10 U.S.C.A. § 1361, is as follows:

"The President, in time of war, is empowered, through the Secretary of War, to take possession and assume control of any system or systems of transportation, or any part thereof, and to utilize the same, to the exclusion as far as may be necessary of all other traffic thereon, for the transfer or transportation of troops, war materials and equipment, or for such other purposes connected with the emergency as may be needful or desirable."

The plaintiff points to the fact that Executive Order No. 9108 does not provide for the taking of plaintiff's railroad and its properties "through the Secretary of War" but provided that the Director of the Office of Defense Transportation should take such possession. The question presented is whether the provision in the Act empowering the President in time of war to take possession of a transportation system "through the Secretary of War", is a mandatory limitation of the power of the President to such possessory action through the Secretary of War, or whether the words "through the Secretary of War" can be disregarded, with the implication that the President may adopt such agency or method in taking possession of a transportation

system for use in the war effort, that he may deem expedient.

■ In cases where the wording or phrasing of an Act is doubtful or ambiguous, we may resort to other aids for construction. But where the wording and phrasing is neither doubtful nor ambiguous, the law of construction of statutory enactments demands that the intention of the legislative body shall be obtained primarily from the language used in the Act. As was said in the case of United States v. Standard Brewery, 251 U.S. 210, 217, 40. S.Ct. 139, 140, 64 L.Ed. 229: "Nothing is better settled than that in the construction of a law its meaning must first be sought in the language employed."

■ The Act under discussion provides that the President, in time of war, is empowered through the Secretary of War to take possession and assume control of any system of transportation, and to utilize the same, to the exclusion as far as may be necessary of all other traffic thereon; *for the transportation of troops, war materials and equipment, or for such other purposes connected with the emergency as may be needful or desirable.* By this language it was apparently the intention of the Congress that in time of war, a transportation system taken over by executive order should be operated by the Secretary of War for the prime purpose of the war effort, such as the transportation of troops, war material and equipment; that civilian traffic would be excluded insofar as it might interfere with the operation of the railroad for the war effort; and that the Secretary of War's possession and operation would dedicate the operation of the system to the war effort rather than as a government agency with the war effort incidental to the possession and control taken over by the government.

■ The legislative history of the Act sustains this construction. During the First World War, President Wilson exercised the power granted to him under this Act, and did not designate the then Secretary of War, but instead the President designated William G. McAdoo, then Secretary of the Treasury, as Director General of Railroads. Whether or not Congress considered this action of the President as not in conformity with the powers granted to the President under the Act, the Congress by the Federal Control Act of March 21,

1918, 40 Stat. 451, expressly ratified the action of President Wilson in the appointment he had made. If the appointment of William G. McAdoo, had been proper, there was no necessity that the Congress ratify the action of President Wilson in appointing William G. McAdoo, and in not following the provision of the Act requiring that the President act through the Secretary of War. The fact that the Congress did enact legislation to ratify the action of the President in appointing the Secretary of the Treasury as Director General of Railroads must be considered in arriving at the intention of the Congress as expressed in the words of the Act. The action of the Congress in enacting the Federal Control Act cannot be taken as conclusive of the question. All that can be said with reference thereto is that it is to some extent persuasive when viewed as a wartime measure.

Subsequent legislation by the Congress with reference to war-time powers granted to the President does not contain any such limiting language as is contained in the Act of August 29, 1916. The Priorities and Allocations Act, 50 U.S.C.A.Appendix, sec. 1152, in Subd. 8 provided: "The President may exercise any power, authority, or discretion conferred on him by this subsection (a), through such department, agency, or officer of the Government as he may direct and in conformity with any rules or regulations which he may prescribe," and the same language appears in Subd. 8 of the Second War Powers Act, 50 U.S.C.A.Appendix § 633. Under Section 3 of the War Labor Disputes Act, 50 U.S.C.A.Appendix § 1503, the President was authorized to take possession of any plant, mine or facility when the President determined that as a result of a strike or other labor disturbance, the war effort would be unduly impeded or delayed by such interruption, and provided that "Such power and authority may be exercised by the President through such department or agency of the Government as he may designate."

Under the contention of defendants, the language of the Act of 1916, empowering the President to take possession of a transportation system *through the Secretary of War* means in substance the same as the language employed in these later War Acts which empower the President to act through such department or agency of the Government as he might direct. It could not logically be contended that if the President had, under a claimed right under the Priorities and Allocations Act, appointed some individual who did not qualify as a department, agency or officer of the Government, that such appointment would not have been void. That point was inferentially decided by the Supreme Court in the case of United States v. Chemical Foundation, 272 U.S. 1, 47 S.Ct. 1, 71 L.Ed. 131.

In that case the validity of an executive order of the President was attacked by the United States on the ground that the order was void because it was not in conformity with the statute. In passing on this question, the court said (pages 13, 14 of 272 U.S., at page 5 of 47 S.Ct., 71 L.Ed. 131):

"The United States argues that the Executive Order of December 3, 1918, was void * * *."

"Section 5(a) of the Act [50 U.S.C.A. Appendix § 5(a)] provides that: 'The President may exercise any power or authority conferred by this act through such officer or officers as he shall direct.' * * * The language of the executive order is: 'I hereby vest in Frank L. Polk all power and authority conferred upon the President by the provisions of section 12. * * *' * * *

"It is argued that the order was not made in conformity with the statute because to 'vest' power in another is not to 'act through' him, and because the order did not show that Mr. Polk was an officer. But, if two constructions are possible, and one of them would render the order useless and the other give it validity, the latter is to be adopted. Cf. Panama R. R. Co. v. Johnson, 264 U.S. 375, 390, 44 S.Ct. 391, 68 L. Ed. 748; United States v. Coombs, 12 Pet. 72, 75, 76, 9 L.Ed. 1004. The intention to exert the power conferred under section 5 is plain. Meticulous precision of language was not necessary. Russell [Motor Car] Co. v. United States, 261 U.S. 514, 523, 43 S.Ct. 428, 67 L.Ed. 778. While the use of the word 'vest' was not accurate, it must be deemed sufficient when the context and circumstances are considered. Mr. Polk was an officer through whom the President was authorized to act. He was Counsellor for the Department of State, appointed by the President and confirmed by the Senate. United States v. Germaine, 99 U.S. 508, 25 L.Ed. 482. No particular form of designation was required. It would be unreasonable to read the order otherwise than as meaning that, in respect of the matters covered by section 12, the

President determined to act through Frank L. Polk, counselor for the Department of State."

Further we here have an Act which affirmatively designates the Secretary of War as the agency through whom the President shall act, as distinguished from subsequent legislation which empowers the President to select any agency or department of the Government that he may choose. The implication of the two forms adopted by the Congress is so radically different, that the court cannot determine that the Congress intended the same thing by such different wording and phrasing. We have here an Act which directs the taking to be done in a certain and particular manner. An Act so phrased means that the power granted shall not be done in any other manner, even though there be no words of negation prohibiting action other than that directed to be taken. A statute which directs performance of a certain thing in a particular manner, bears the implication that the action taken shall not be carried out otherwise than as directed nor by a different person. As was said in Botany Worsted Mills v. United States, 278 U.S. 282, 289, 49 S.Ct. 129, 132, 73 L. Ed. 379: "When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode. Raleigh, etc., R. R. Co. v. Reid, 13 Wall. 269, 270, 20 L.Ed. 570; Scott v. Ford, 52 Or. 288, 296, 97 P. 99."

Further the court cannot deliberately disregard the words "through the Secretary of War", and hold that the Congress did not mean "through the Secretary of War," but meant through any agency, department or officer of the United States that the President might designate. To so hold would be to treat the words "through the Secretary of War" as surplusage and of no meaning or effect whatsoever. The court cannot indulge in speculation or surmise as to any qualifications which may have been in the mind of the Congress, but the Act must be given effect according to its plain meaning.

The court is of the opinion that it was the clear intention of the Congress in incorporating "through the Secretary of War" into the wording of the Act to provide the method and instrumentality which the President would be compelled to use upon assuming possession and control of a transportation system during time of war,

and that the President had no power under the Act to designate some agency or person other than the Secretary of War. And where an executive exercises powers which are delegated to him by an enabling act, he must exercise the power so granted in substantial conformity with the conditions and requirements declared in the act. Mahler v. Eby, 264 U.S. 32, 44 S.Ct. 283, 68 L.Ed. 549; Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446.

It is upon such principles that our government was founded. The executive department of our government cannot exceed the powers granted to it by the Constitution and the Congress, and if it does exercise a power not granted to it, or attempts to exercise a power in a manner not authorized by statutory enactment, such executive act is of no legal effect. The court concludes that standing alone without consideration of any subsequent enabling legislation, the President had no legal right to take possession of plaintiff's railroad and properties, except through the Secretary of War.

The Congress passed the Federal Control Act of March 21st, 1918, 40 Stat. 451. Section 8 of this Act stated that the President "may execute any of the powers herein and heretofore granted him with relation to Federal control through such agencies as he may determine * * * and may also call upon any department, commission, or board of the Government for such services as he may deem expedient."

Section 9 provided that the Act of August 29, 1916, should remain in full force and effect "except as expressly modified and restricted by this Act."

Plaintiff alleges that Section 200 of the Transportation Act of 1920, 41 Stat. 456 et seq., repealed Section 8 of the Federal Control Act, while defendants maintain that Section 8 was not so repealed. It is plain that if Section 8 was not repealed and has been in force since its passage, that President Roosevelt was justified in taking possession of the plaintiff's properties, because Section 8 empowered him to execute the power granted him by the Act of August 29, 1916, "through such agencies as he may determine." The significant question for determination, therefore, is whether Section 8 of the Federal Control Act was repealed by the Transportation Act of 1920.

Section 200 of the 1920 Act, after providing in subsection (a) that Federal Con-

trol should terminate on March 1, 1920, stated:

"(b) Thereafter the President shall not have or exercise any of the powers conferred upon him by the Federal Control Act relating—

"(1) To the use or operation of railroads or systems of transportation;

"(2) To the control or supervision of the carriers owning or operating them, or of the business or affairs of such carriers; * * *." (41 Stat. 457.)

Subsection (c) of section 200 of the 1920 Act stated

"Nothing in this Act shall be construed as affecting or limiting the power of the President in time of war (under section 1 of the Act entitled 'An Act making appropriations for the support of the Army for the fiscal year ending June 30, 1917, and for other purposes,' approved August 29, 1916) to take possession and assume control of any system of transportation and utilize the same." 41 Stat. 457, 458.

■ The rules of construction applicable to statutes generally govern the construction of statutes or parts thereof, purporting to repeal prior statutes. A statute containing a repealing clause must be construed as a whole, and the legislative intent given effect. In the opinion of the court, the Congress intended to repeal all of the principal war powers granted to the President under war-time legislation, so that no questions concerning the exercise of those extraordinary powers so granted would extend into the post-war period; that the Congress considered that in the event of another war, that the conditions and circumstances then arising could be met by legislation framed to meet the particular emergency that would then arise; and that policy has been demonstrated in the sweeping and extensive powers granted to the President in legislation enacted since December 7, 1941.

■ The court has considered the provisions of the 1920 Act and is convinced that the language of this Act is clear and unambiguous; that the intention of the Congress to repeal Section 8 of the Federal Control Act is clear, as also was the intention of the Congress to continue in force and effect the provisions of the Act of August 29, 1916, which empowered the President, in time of war, to take possession and assume control through the Secretary of War of any system of transportation.

Since the Act of August 29, 1916, required the President to assume control of a railroad system only through the Secretary of War, and Section 8 of the Federal Control Act was repealed, then it is necessary to consider the provisions of the First War Powers Act, Act of December 18, 1941, 55 Stat. 838, 50 U.S.C.A.Appendix, secs. 601, 602. Section 601 provides:

"For the national security and defense, for the successful prosecution of the war, for the support and maintenance of the Army and Navy, for the better utilization of resources and industries, and for the more effective exercise and more efficient administration by the President of his powers as Commander in Chief of the Army and Navy, the President is hereby authorized to make such redistribution of functions among executive agencies as he may deem necessary, including any functions, duties, and powers hitherto by law conferred upon any executive department, commission, bureau, agency, governmental corporation, office, or officer, in such manner as in his judgment shall seem best fitted to carry out the purposes of this title, and to this end is authorized to make such regulations and to issue such orders as he may deem necessary, which regulations and orders shall be in writing and shall be published in accordance with the Federal Register Act. * * *"

Section 602 provides:

"In carrying out the purposes of this title the President is authorized to utilize, coordinate, or consolidate any executive or administrative commissions, bureaus, agencies, governmental corporations, offices, or officers now existing by law, to transfer any duties or powers from one existing department, commission, bureau, agency, governmental corporation, office, or officer to another, to transfer the personnel thereof or any part of it either by detail or assignment, together with the whole or any part of the records and public property belonging thereto."

Under these sections of the First War Powers Act, the President was empowered to make such redistribution of functions among executive agencies as he might deem necessary, including any functions and powers hitherto by law conferred upon any executive department, commission, bureau, agency, governmental corporation, office, or officer, in such manner as in his judgment should seem best fitted to carry out the purposes of the title of the Act.

In carrying out the purpose of the title of the Act the President was authorized to utilize any executive or administrative commissions, agencies, governmental corporation, offices or officers now existing by law or to transfer any duties or powers from one existing department etc. to another.

The power thus conferred upon the President does not admit of any doubt or uncertainty. The executive functions granted to the President under the Act of August 29, 1916, which were to be exercised solely through the Secretary of War, could be transferred and delegated to the Director of the Office of Defense Transportation for one special railroad or in general for all railroads in the country. The language and phrasing of the pertinent sections of the First War Powers Act is so clear and unambiguous that there is no doubt of the intention of the Congress to grant unto the President these wide and sweeping powers, commensurate to the great task assigned to our Chief Executive as Commander of the Armed Forces of the United States.

The plaintiff does not deny that such construction as is here adopted is the correct construction, but it claims that no valid delegation of the Director of Defense Transportation could be made under Executive Order No. 9108, because of noncompliance with the term of the Federal Register Act of 1935. Act of July 26, 1935, c. 417, 49 Stat. 500 et seq., 44 U.S.C.A. § 301 et seq.

44 U.S.C.A. § 302, provides in part:

"The original and two duplicate originals or certified copies of any document required or authorized to be published under section 305 of this chapter shall be filed with the Division * * *."

Section 305 provides, in part:

"(a) There shall be published in the Federal Register (1) all Presidential proclamations and Executive orders, except such as have no general applicability and legal effect or are effective only against Federal agencies or persons in their capacity as officers, agents, or employees thereof; * * *."

Section 307 provides, in part:

" * * * unless otherwise specifically provided by statute, such filing of any document [with the Division of the Federal Register], required or authorized to be published under section 305 of this chapter, shall, except in cases where notice by publication is insufficient in law, be sufficient to give notice of the contents of such document to any person subject thereto or affected thereby. * * *"

Plaintiff raises the question that Executive Order No. 9108 under which the President delegated the Director of Defense Transportation to assume possession of plaintiff's properties was invalid under the First War Powers Act because (a) there is contained in the order no reference to any particular statute under which the President acted, and (b) there is in the order no express statement that the power given to the President to be exercised through the Secretary as laid down in the Act of August 29, 1916, was delegated to the Director of the Office of Defense Transportation.

The President was authorized under the First War Powers Act to make such redistribution of functions among executive agencies as he might deem necessary. The Act after empowering the President to so act states that the President "to this end" is authorized to make such regulations and to issue such orders as he may deem necessary, which regulations and orders shall be in writing and shall be published in accordance with the Federal Register Act of 1935.

Executive Order No. 9108 was published in the Federal Register, in the issue of March 24, 1942 (7 F.R. 2201), so that the necessary procedure was followed. It may be that language of the exactitude stated to be essential to the validity of the action of the President, was not employed in the wording of Executive Order No. 9108, but the language shows that the President was exercising the power granted to him by statutory authority. It was not necessary that any precise form be employed for meticulous precision was not required. Russell Motor Car Company v. United States, 261 U.S. 514, 43 S.Ct. 428, 67 L.Ed. 778; United States v. Chemical Foundation, 272 U.S. 1, 47 S.Ct. 1, 71 L. Ed. 131. The order was sufficient in substance to clearly indicate the intention of the President to exercise his war-time power of seizing a transportation system as an emergency matter, and delegating or transferring the power from the Secretary of War to the Director of Defense Transportation. It is not necessary in Executive Orders that the President identically refer to a statutory provision under which he

596

exercises a power. It is sufficient, if he actually has such power, and exercises it according to some existing statute. United States v. MacDaniel, 7 Pet. 1, 32 U.S. 1, 8 L.Ed. 587.

█ The Federal Register Act provides that there shall be published in the Federal Register all Presidential proclamations and Executive Orders, except such as have no general applicability and legal effect. The exercise of the Presidential power to assume possession of plaintiff's properties was not of general applicability as it referred to plaintiff's properties solely and not to any other railroad in the United States. Such action was of special applicability and there was no necessity that the form contended for by plaintiff be followed by the President in this particular case. The purpose of the Federal Register Act was to give notice to industry, to general business, or to the people of the country as a whole, of certain action taken by the President under a power granted to him by the Congress, so that such industry, business or the people might have notice of such action and act accordingly. It was not intended that the President had to act in the same way when the action of the President was directed toward one certain property or individual.

To maintain the contrary it would be necessary that we hold that the President, in the exercise of the emergency powers granted to him in war-time, should be so enmeshed in red tape and technicality that a complete study of all available legislation would have to be studied and co-ordinated before the President could act. It is not upon such that war-time emergencies are met. It is upon prompt and efficient action that the situation must be handled. And so long as the President has the power and exercises that power substantially in accordance with the statute, we cannot say that the President did not act in accordance with the power conferred upon him. Under the First War Powers Act the President had unquestioned power to delegate to the Director of Defense Transportation the assumption of possession of plaintiff's properties; under the Act of August 29, 1916, the President could only act through the Secretary of War. When it is assumed that the President did not have the power granted under the First War Powers Act, the power of the President was limited to action through the Secretary of War, but when we consider the power granted under the First War Powers Act, the President could act through any agency, department, office or officer of the United States.

The court is of the opinion that the President had full power under the First War Powers Act to direct that assumption of possession of plaintiff's properties be transferred from the Secretary of War to the Director of Defense Transportation; that no particular phraseology was necessary in the Executive Order under which such transfer was to be made; and Executive Order No. 9108 by which possession of plaintiff's properties was assumed was not of general applicability and legal effect. The court, therefore, concludes that the original possession, control and operation of plaintiff's properties was authorized by the Act of August 29, 1916, the First War Powers Act and Executive Order No. 9108.

█ On December 23, 1943, the President, acting under the authority of the Act of August 29, 1916, took possession of all the railroads in the continental United States. This was done by the President's Executive Order No. 9412, which directed that such possession be taken by the Secretary of War, who on December 23, 1943, gave notice that he had taken possession of plaintiff's properties. On January 18, 1944, the Secretary of War issued his Termination Order which is in part, as follows:

"1. Pursuant to the provisions of Executive Order No. 9412, dated 27 December, 1943, it is hereby determined that continued possession, operation and control by the United States of the carriers taken and assumed by or pursuant to that order, are no longer required in order to prevent interruption of transportation service * * *

"3. * * *

"(a) Possession, operation and control by the United States of all common carriers by railroad * * * and all appurtenances and facilities used in connection therewith, taken and assumed by or pursuant to that order are hereby terminated and relinquished as of 12:00 o'clock midnight, 18 January 1944."

Plaintiff's railroad property was thus taken over by the Secretary of War under the 1916 Act. What the necessity was that caused the President through Executive Order No. 9412, to again take possession of plaintiff's property through the Secretary of War, is nowhere explained by the defendants. But when the President did issue Executive Order No. 9412, consistency de-

mands that the court hold that the promulgation of that order retransferred the power to assume possession of plaintiff's railroad property, back to the Secretary of War. Otherwise there would be an outstanding delegation by the President to both the Director of Defense Transportation and the Secretary of War. Manifestly, if the President transferred the power granted to him under the 1916 Act empowering the Director of Defense Transportation to assume possession of plaintiff's railroad property, then the issuance of Executive Order No. 9412 to assume possession thereof, retransferred such power to the Secretary of War. There it would remain until the President by his Executive Order should designate some other agency or department of the Government. The right to possession of plaintiff's property would not shift back and forth, except under some valid Executive Order.

As soon as we concede that Executive Order No. 9412 was a valid exercise of the President's statutory power to seize all the United States railroads, including that of plaintiff, we must conclude that any delegation of authority by the President to the Director of Defense Transportation was revoked by the promulgation of Executive Order No. 9412. And when the Secretary of War terminated possession and control by the United States of all common carriers by railroad, all rights of the United States to possession were relinquished and terminated. The Secretary of War had it within his power to have terminated possession, operation and control by the United States of all common carriers by railroad, except that of plaintiff. Or upon relinquishment by the Secretary of War of all of the railroads, the President could have issued another Executive Order delegating the power conferred upon him to the Director of Defense Transportation. In the absence of continuance of possession by the Secretary of War, or the promulgation by the President of a new Executive Order, then all possession, operation and control by the United States ceased. The provisions of Executive Order No. 9108 would not automatically be reinstated, because the President by his Executive Order No. 9412, had destroyed the effectiveness of that Order.

It must be assumed that the possession of the Director of Defense Transportation and the Secretary of War was the possession of the United States. And possession by the United States was specifically relinquished by the Secretary's Termination Order of January 18, 1944. To hold otherwise would be to hold that the Secretary of War had no legal right to seize plaintiff's property under Executive Order No. 9412, because the power with reference to seizing that particular property had been delegated to the Director of Defense Transportation by Executive Order No. 9108. But that contention must fail because the President had the power to transfer the power delegated to him under the 1916 Act to the Director of Defense Transportation and also had the power to terminate the grant of power to the Director and delegate such power to the Secretary of War. And when we hold that the President had such power, that power once exercised would remain in statu quo until the President had by another order changed its status.

It is of no importance whether we assume that the President had the authority of delegating his power under the 1916 Act and consider that Section 8 of the Federal Control Act was not repealed so that the President could lawfully designate any agency or department of the United States to assume possession of plaintiff's railroad property, or consider that Section 8 was repealed by the Transportation Act of 1920, and that the President derived his authority to transfer the functions of the Secretary of War under the 1916 Act, the action of the President in delegating the Secretary of War to assume possession of plaintiff's property on December 27, 1943, would have the effect of divesting any previous power or delegation granted to the Director, and thereafter the Secretary of War would be the sole agency or department that could lawfully act until the President had promulgated a new Executive Order transferring the functions of the Secretary of War in the premises to some other agency or department of the Government.

The court is compelled to conclude that when the Termination Order of January 18, 1944, was issued by the Secretary of War that such action terminated possession and control by any agency, department or officer of the United States. Therefore, the Director of Defense Transportation had no legal right to assume possession of plaintiff's railroad after January 18, 1944, and in the absence of further action by the President, the plaintiff's property should have been returned to plaintiff.

This conclusion arrived at by the court disposes of the remaining contentions of the parties. If the present possession of plaintiff's property is not the possession of the United States through some agency or department thereof, the question of future compensation for the use of plaintiff's property against the United States is not here involved. And with reference to any claim of the plaintiff for compensation for prior lawful possession by the Director of Defense Transportation and by the Secretary of War, such claim cannot be adjudicated in this proceeding.

■ With reference to the contention of the defendants that the United States is the real party in interest in this suit, the conclusion of the court as above stated also disposes of this contention. Where there is an invasion of a legal right, either on the part of the Government, or an officer of it, acting in excess of a power validly conferred by a constitutional statute, then a suit will lie to restrain further action by the officers of the Government who are acting under the claimed power. In the case of Philadelphia Co. v. Stimson, Secretary of War, 223 U.S. 605, page 619, 32 S.Ct. 340, 344, 56 L.Ed. 570, the court said: "If the conduct of the defendant constitutes an unwarrantable interference with property of the complainant, its resort to equity for protection is not to be defeated upon the ground that the suit is one against the United States. The exemption of the United States from suit does not protect its officers from personal liability to persons whose rights of property they have wrongfully invaded. Little v. Barreme, 2 Cranch 170, 2 L.Ed. 243; United States v. Lee, 106 U.S. 196, 220, 221, 1 S.Ct. 240, 27 L.Ed. 171, 181, 182; Belknap v. Schild, 161 U.S. 10, 18, 16 S.Ct. 443, 40 L.Ed. 599, 601; Tindall v. Wesley, 167 U.S. 204, 17 S.Ct. 770, 42 L.Ed. 137; Scranton v. Wheeler, 179 U.S. 141, 152, 21 S.Ct. 48, 45 L.Ed. 126, 133. And in case of an injury threatened by his illegal action, the officer cannot claim immunity from injunction process. The principle has frequently been applied with respect to state officers seeking to enforce unconstitutional enactments. * * * And it is equally applicable to a Federal officer acting in excess of his authority or under an authority not validly conferred. * * *

"The complainant did not ask the court to interfere with the official discretion of the Secretary of War, but challenged his authority to do the things of which complaint was made. The suit rests upon the charge of abuse of power, and its merits must be determined accordingly; it is not a suit against the United States." To the same effect are Work v. Louisiana, 269 U.S. 250, 46 S.Ct. 92, 70 L.Ed. 259; State of Colorado v. Toll, 268 U.S. 228, 45 S.Ct. 505, 69 L.Ed. 927; Ickes v. Fox, 300 U.S. 82, 57 S.Ct. 412, 81 L.Ed. 525.

■ With reference to the question of whether the Director of Defense Transportation is an indispensable party to this suit, if the suit were for the purpose of controlling in some manner the action of the Director without denying the authority under which he acted, then the Director would be an indispensable party, but where the acts of his agents or subordinates are without authority of law, then the action may be maintained against the agents without joining the Director. In the case of State of Colorado v. Toll, 268 U.S. 228, page 230, 45 S.Ct. 505, 506, 69 L.Ed. 927, the court said: "The object of the bill is to restrain an individual from doing acts that it is alleged that he has no authority to do and that derogate from the quasi-sovereign authority of the State. There is no question that a bill in equity is a proper remedy and that it may be pursued against the defendant without joining either his superior officers or the United States." In the case of Neher v. Harwood, 9 Cir., 128 F.2d 846, page 849, the court said: "The plaintiff in this case, it is clearly seen, was not claiming that the superior officer had abused a discretion legally vested in him, but rather that he had no statutory authority whatsoever to issue the regulations complained of. * * * Where he was without authority to act at all in the premises his actions assuming to authorize action by the subordinate were of no validity and left the subordinate as the actor subject to restraint."

■ On the question of the jurisdiction of the circuit court of McDonough county, it appears that a portion of plaintiff's railroad is located in that county. The action is local as it involves the recovering of possession of plaintiff's property from persons who it is claimed are illegally holding same. Jurisdiction of a state court has been sustained in similar cases. Northern Pac. Ry. Co. v. North Dakota, 250 U.S. 135, 39 S.Ct. 502, 63 L.Ed. 897; Brooks v. Dewar, 313 U.S. 354, 61 S.Ct. 979, 85 L.Ed. 1399. The circuit court of McDonough

county had jurisdiction of the subject matter of this suit.

On the question of service on the defendant, Stover, the court is of the opinion that under the circumstances proper service was had on that defendant. As the state court had jurisdiction of the subject matter of this suit, it properly acquired jurisdiction of the defendant, Stover, by personal service. Stover was not the head of a department of the Government and also, he is being sued individually. As a non-resident he had the right to remove this cause to this court, but such removal did not invalidate the prior valid service of process upon him.

In accordance with the above an order may be prepared for entry herein overruling the motion of the defendants to strike the complaint filed herein and to dismiss this suit. A rule will also be entered upon the defendants to file their answer herein within some time to be agreed upon between the parties.